### John A. Glenn et al., Plffs. in Err., *v.* Commonwealth of Pennsylvania.

Where the court below approved the report of viewers and ordered a public road to be opened a certain width, it exhausted its power in this respect, and a subsequent opening order made thereon was *ultra vires.*

That which the supervisors open as the road or adopt as such, which the public maintains, and on which it travels, is the highway.

Anyone obstructing such highway, or any part of it, is guilty of a public nuisance and is liable to indictment.

(Decided November 1, 1886.)

Argued October 18, 1886, before GORDON, TRUNKEY, STERRETT, and GREEN, JJ. October Term, 1886, No. 39, W. D. Error to the Quarter Sessions of Butler County to review a judgment on conviction on an indictment for obstructing a public highway. Affirmed.

The defendants below were indicted for obstructing a road in Worth township, by building a fence across said road and piling stones on it where it crossed the land of the defendant, John A.

NOTE.—The road as opened by the supervisors in pursuance of a view, and the order to open, fix the width in determining whether a nuisance has been committed by obstructing it. Com. v. Plymouth Twp. 19 Pa. Super. Ct. 408; Com. v. Jackson, 10 Pa. Super. Ct. 524; Com. v. Marshall, 137 Pa. 170, 20 Atl. 580.

Glenn. It appeared on the trial that in the year 1849, on the petition of owners in the vicinity of the road in question, viewers were appointed who went upon the ground, surveyed, marked, and laid out a public road over an old path or road, and made return to the court, which was duly confirmed November 13, 1849. The width of the road was fixed and an opening order issued, and it is alleged by the commonwealth that the road so laid out has been used continuously ever since until the obstruction by defendants in the summer and fall of 1885, for which they were indicted.

The defendants justified their action under the following alleged facts:

They claimed that the opening order of 1849 was never executed; and that in 1883 on petition of R. F. Glenn, father of two of the plaintiffs in error, an opening order was issued to the road commissioners of Brady township commanding them to open this road.

On petition of other landowners alleging that this order was granted under a misapprehension and misstatement of the facts; that said road had been opened and traveled for over thirty-three years where it was now located, although never opened to the full width of 33 feet; and that the order was granted to issue to the road commissioners of Brady township, whereas, a part of the road is in Worth township,—a rule to show cause why the opening order should not be revoked was granted and proceedings were stayed.

On the hearing of such rule the court delivered an opinion, *inter alia,* as follows:

"In this case the question is whether the road was ever opened on part of the location. The supervisor to whom the original order was directed swears it was not. If so, an alias order should issue. The petitioners for the revocation admit that the road was not opened to its full width. It was, therefore, not 'effectually opened,' and an order should issue. It is for the supervisors to advise themselves as to the facts, and if part of the road has never been opened, to proceed to open such part.

"The statute of limitations does not run against the public. If they find, however, that it has been opened, worked, and traveled on as a public road for years, though not on the recorded site, it would not be their duty to interfere. As it is admitted,

however, that the road has not been opened to its full width, we must refuse to revoke the opening order and leave the other matter with the supervisors as public officers sworn to do their duty in the premises. The proper practice, we think, would be, in case of a refusal by the supervisors to do their duty, to ask for a mandamus. The petition for revocation of opening order is refused."

Thereafter the opening order of April 6, 1885, was placed in the hands of the road commissioners, who, under a special law, perform the duties of supervisors in said townships, who procured the services of the county surveyor and after giving notice of the time and place of the meeting proceeded to locate the line of the road in accordance with the courses and distances of the original draft; and the road commissioners of Brady township worked the same on the ground as designated by the county surveyor, and directed the plaintiffs in error and other landowners adjacent thereto to open said road according to the courses and distances of the original view as pointed out by the surveyor. The plaintiffs in error moved their fences as directed by the road commissioners, and according to the courses and distances of the original view as marked and shown them by the county surveyor, to within a distance of 17 feet from the center of the location so designated.

While thus acting in pursuance of an adjudication of the court of quarter sessions, and under direction of the road commissioners of Brady township, the complaint on which this indictment is founded was made against them.

Defendants at the trial of the indictment in the court below offered to show the exact location of the road of 1849 and that the act of obstructing the road was not committed on any part of such location. This was objected to as irrelevant and incompetent; and that the question in this case was not where the survey made by the viewers in 1849 is, but, Where was the road originally, as opened, used, worked upon, and enjoyed by the public? The court sustained the objection.

Defendants offered to prove the proceedings under which the opening order of 1885 was granted, and the subsequent proceedings as to the location of the road by the county surveyor under the opening order; and that the acts of defendants were not committed upon the line of the road thus located. This was ob-

jected to as irrelevant and incompetent; and that the petition for the opening order was confined to Brady township, whereas, defendants were indicted for obstructing a road in Worth township.

The court, HAZEN, P. J., charged the jury, *inter alia*, as follows:

"The legal existence of the road does not in any way depend upon the opening order. If the road be properly provided for in all other respects, and the supervisor goes upon the land, finds the marks upon the ground, and marks it out, it is as good as if he had the most amply prepared opening order. Then, gentlemen, when you come to the question as to whether this road in controversy was surveyed, marked, laid out upon the ground, and opened up for travel, whether it is there in pursuance of these proceedings or not, you must take into account what was testified to before you.

"Further. The opening order that will be before you was issued in this year, I believe in April; whatever date it was it will show upon the order; it is claimed by the commonwealth that that was placed in the hands of the supervisor of that township, and that in pursuance of that he opened up and went over the line of the road. We will say to you this on the matter of that order: that order placed in the hands of the supervisor, he going upon the line of that road, finding the road opened in pursuance of any warrant of law preceding that, would not justify him in changing the line of that road. He could not even do so with the consent of the owners of the property along the line of it.

"It has been decided that where a road was properly surveyed, marked, laid out, and approved by the court and opened erroneously by the supervisor, no doubt honest in his intentions, but on a little different ground from that where the opening order showed it should be or the survey showed it should be, the court held that after it had existed there for seven years it could not be disturbed. But that was a road where it was admitted that the opening where it was made was in pursuance of the proceedings to create that a legally authorized road. Hence we say to you that this opening order that was issued the present year could authorize nothing more than the making of that road the thirty-three feet wide from the middle line of the road wherever the supervisor found it open for travel. This road, if you find

that it was opened up and recognized by the road supervisor or supervisors as the case may be, if opened up in pursuance of this proceeding, has existed as both parties admit, and has, it is not disputed, continuously since 1849 or 1850, if you should find as a fact from the evidence that the road where it was obstructed (and that is the point in question) was there in pursuance of the proceedings instituted in 1849 and has been kept continuously since, some thirty-five years, then we say to you, gentlemen, having found that as a fact, your duty would be to render a verdict of guilty, unless you find some extenuating circumstance and which we will allude to when we come to answer one point. If, on the other hand, as claimed earnestly by the counsel for the defense, this was a road by prescription and never in fact had any existence under and in pursuance of proceedings to create it a public road, and is there in fact by prescription and you so find from the evidence, then we say to you that we think that point is well taken and you should find for the defendants. This we submit to you for your consideration.

"That you may more clearly understand what we mean, we say that where a road is once opened, either with or without an opening order, on the line surveyed, marked, and laid out or intended to be on that line, where the supervisor goes in his official capacity and is presumed to act in good faith, though the place he opens up differs as to the courses and distances marked upon the plot, though it may differ somewhat from that where it was surveyed and marked upon the ground, then that road so opened up and recognized is the road, and no opening order after that can issue to change it. If changed, and there is abundant means provided for making such changes, that change must be by a petition to the court of quarter sessions asking a review. Parties are not left without a remedy. There is a good and sufficient remedy in law where errors may creep in, either by the inefficient manner in which the survey in marking or laying out of the road has been done, or by some change of the marks, obliteration of the marks, and the parties presuming to act in good faith, but even if they don't act in good faith, the remedy is by petition to the quarter sessions for relief. . . . The supervisors have no power to change the location made by the viewers, even with the assent of the owners of the land through which the road passes."

The defendants, *inter alia,* presented the following points:

2. The draft returned by the viewers and attached to their report and offered in evidence by the prosecution, showing the location of the road laid out by them, is the best evidence of where the road granted by the court was located.

Refused, with this further explanation: The marks upon the ground made by the viewers where they located that road is the best evidence. The draft was doubtless made in some office far away from that road; and the monuments left upon the line of that road we say to you is the best evidence of where that road was laid out; and if that be the place and you so find where it was opened up, if opened up, in pursuance of the proceedings in court, that is the proper place for the road.

3. The draft returned by the viewers and attached to their report and offered in evidence by the prosecution, showing the location of the road laid out by them, in the absence of ambiguity, is the only evidence of where the road granted by the court was located.

Refused, with this explanation: The draft would doubtless be very good evidence of where that road was laid out, but we submit to you the evidence to determine whether the parties at the time going upon the ground, taking charge of the road, if they do so, were not in possession of the monuments there made, erected, to determine the location on the ground. That the draft is to be taken into consideration as evidence of the location of it we submit. Further, we submit also the evidence as to whether the road was or was not laid out where the draft shows it at the point where the obstruction was placed on it.

4. If the surveyor, taking the draft returned by the viewers in that proceeding and attached to their report locating said road, and now of record in the court of quarter sessions of Butler county and offered in evidence by the prosecution, can locate the said road and show that such location will not cover any part of the ground obstructed by the defendants, the verdict must be for the defendants.

Refused, with this additional explanation: Though much of what we have said in answer to the second and third points applies to this, we submit the evidence to you to determine whether the location was upon that which was marked and shown by the draft; and second, whether the party opening that road there, if opened at all, did not open it upon the line as marked on the

ground.    If so, the courses and distances as shown by the survey of record and which is in accord, as we understand, and ought to be in accord, with the opening order, the marks on the ground would prevail against it in any event.    It is for you to determine whether on the point in controversy the line as adopted by the road supervisors is the line that was surveyed, or if it were not the line but was adopted by the road supervisors who are presumed to have acted in good faith, then that is the legal place for the road; that is a legally constituted road, properly opened.

5. The prosecution having offered in evidence an opening order dated — day of April, 1885, together with a draft of the location of the road thereto attached, the jury must acquit the defendants unless they find that the location of the road as designated in said draft covers at least some portion of the ground obstructed, for the building of which the defendants are indicted.

Refused, for the reasons assigned in the three next preceding points.

7. That there is no evidence in this case that the said road for the obstruction of which the defendants are indicted in this case was ever opened by authority of law except under opening order at April ——, 1885, offered in evidence by the prosecution with the draft thereto attached; and unless the jury are satisfied beyond a reasonable doubt that the courses and distances set forth in said draft will cover the place obstructed by the defendants, the verdict must be not guilty.

Refused, for the reasons stated in our general charge and what we have said in answering points applicable to this.

8. If the defendants erected their fence more than 16½ feet from the center of the surveyed line as laid out by the viewers and located on the ground by surveys had, after notice given by road commissioners, by surveyor in their employ, under an opening order issued in 1885 and given in evidence by the prosecution, although said fence may have obstructed an old road running parallel or adjacent thereto which had never been laid out or opened by order of court, their verdict must be for the defendants.

Ans. As that proposition stands as a whole we refuse it.

9. If the surveyed line of the road given in evidence by the prosecution does not run on the alleged obstructed road, but parallel and adjacent thereto, there can be no conviction under the pleadings in this case and the jury should acquit.

*Ans.* What we remarked in regard to the monuments found upon the ground when the road was first opened is applicable to this point, and we refuse it.

10. The road commissioners or supervisors of a township have no authority to open a public road at a different place than that reported by the viewers, as the road laid out by the viewers and approved by the court cannot be altered in its courses by the supervisor even with the consent of the owners of the land.

*Ans.* We affirm this in its broadest application, though we have so stated in our general charge—that the supervisor cannot open up rightfully the road at any other point than that where it was authorized by the marks upon the ground, and the marks on the ground and the plot showing the survey of it should correspond; but if they differ, then the marks on the ground prevail, as we have repeatedly stated to you. Further, it is, as we stated, presumed that the supervisors acted in good faith. They are under oath, officers chosen by the people in the form of the law, and if they should err they are presumed to act in good faith; and if the road is so opened up, though not on the line but in pursuance and intended to be in pursuance of the authority of law creating that road, that line so opened up, accepted, and occupied by the public is the road in law and in fact.

The jury found a verdict of guilty as charged in the indictment, and the court overruled defendants' motion for a new trial and they took this writ, assigning as error the action of the court in sustaining plaintiff's objections to defendant's offers of evidence and the answer of the court to plaintiff's second, third, fourth, fifth, seventh, eighth, ninth, and tenth points.

*Clarence Walker* and *Lev. McQuistion* for plaintiffs in error.

*Charles McCandless* and *S. F. Bowser* for defendant in error.

PER CURIAM:

The opening order, as it is called, of 1885, was *ultra vires.* The court had exhausted its power in this respect when on the 13th of November, 1849, it approved the report of viewers, and ordered the road to be opened to the width of 35 feet. This was the only opening order that the supervisors, or road commission-

ers, were bound to respect; and if they failed to regard that order they were indictable.

As to the case, as it was tried in the court below, we can discover no fault, either in the rulings or charge of the learned judge of the quarter sessions. It certainly ought to be understood by this time that that which the supervisors open as a road, or adopt as such, which the public maintains, and on which it travels, is the highway; and anyone obstructing such highway, or any part of it, is guilty of a public nuisance and so liable to indictment.

Judgment affirmed.